# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RALPH MURPHY, as Trustee of
the ANTHONY E. AND AGNES P.
MURPHY REVOCABLE TRUST
UTA DATED NOVEMBER 25, 1985,

       Plaintiff,

vs.                                             No. CIV 09-1184 JB/ACT

DENA C. KEELING GORMAN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Protective Order, filed April 13, 2010 (Doc. 20). The Court held a hearing on May 12, 2010. The primary issues are: (i) whether the Court should issue a protective order stating that Plaintiff Ralph Murphy's retained legal counsel, the law firm of Keleher & McLeod, P.A. ("the Keleher law firm") in Albuquerque, New Mexico, is not required to produce documents which Defendant Dena C. Keeling Gorman has requested in a Subpoena to Produce Documents, Information or Objects in a Civil Action (dated March 29, 2010); and (ii) whether the Court should compel the Keleher law firm to produce a privilege log. Because the Court finds that Gorman is not a client of the Keleher law firm, and that the Supreme Court of New Mexico likely would not find that a fiduciary exception to the attorney-client privilege applies to communications between a client and his attorney, the Court will not require the Keleher law firm to produce documents evidencing or memorializing communications between the firm and its client, R. Murphy, as the subpoena requests. Because the Court finds that a fiduciary exception also does not pierce the protections of the work-product

doctrine, the Court will not require the Keleher law firm to produce documents as to which the work-product doctrine applies. The Court will therefore grant the motion for a protective order and quash the subpoena. The Court will also grant the request to not require a privilege log at this time without prejudice to either party later requesting a privilege log.

## **FACTUAL BACKGROUND**

Anthony Murphy and Agnes Murphy created the Anthony E. and Agnes P. Murphy Revocable Trust on November 25, 1985. See Complaint for Declaratory Judgment ¶ 8, at 2, filed December 18, 2009 (Doc. 1). After the death of Anthony Murphy, the corpus of the Anthony E. and Agnes P. Murphy Revocable Trust was divided into three separate trusts, named the A-1, A-2, and B Trusts. See Complaint ¶ 11, at 2. One Trust Agreement governs all three trusts. See Defendant's Answer to Complaint and Counterclaim for Declaratory Relief, Accounting, Injunctive Relief, and Removal of Trustee ¶¶ 11-13, at 4, filed January 29, 2010 (Doc. 8). R. Murphy is the duly authorized trustee and a beneficiary of the trusts. See Complaint ¶ 16, at 3. Gorman is a beneficiary of the trusts. See Complaint ¶ 17, at 3. R. Murphy and Gorman have been unable to reach an agreement as to the proper construction to be given the Trust Agreement. See Complaint ¶ 18, at 3. The dispute is whether R. Murphy, as trustee, has an obligation to immediately make a distribution of $1,000,000.00 to Gorman, pursuant to Article VI of the Trust Agreement, as amended. See Answer ¶ 35, at 7. R. Murphy alleges, and Gorman admits, that Gorman threatened punitive litigation if R. Murphy did not accept her construction of the Trust Agreement. See Complaint ¶ 18, at 3; Answer ¶ 8, at 2. R. Murphy, in response to the threat, filed an action for declaratory judgment seeking a declaration of the proper construction to be given to the Trust Agreement, the duty of the trustee, and the relative rights of the beneficiaries of the trusts. See Complaint ¶ 20, at 4.

## PROCEDURAL BACKGROUND

R. Murphy contends that, because he was unable to engage Gorman in a useful dialog regarding the construction of the Trust Agreement, he filed this action for declaratory judgment on December 18, 2009, asking the Court to declare the proper construction to be given to the Trust Agreement.  See Motion at 1.  On January 29, 2010, Gorman concurred in R. Murphy's request for an order construing the terms of the trusts, and asserted counterclaims for an accounting, mandatory injunction, removal of the trustee, and punitive relief, based upon R. Murphy's failure to capitulate to Gorman's construction of the Trust Agreement.  See Answer at 2-12.

R. Murphy retained Spencer Reid and Deron Knoner of the Keleher law firm as his counsel in the litigation.  See Motion at 2.  On March 30, 2010, Gorman served a subpoena for documents on the Keleher law firm.  See Subpoena to Produce Documents, Information or Objects in a Civil Action (dated March 29, 2010), filed April 13, 2010 (Doc. 20-1).  Specifically, Gorman requests that the Keleher law firm produce: (i) all documents relating to the Keleher law firm's representation of R. Murphy, in his capacity as trustee, including but not limited to correspondence, notes and memoranda, and electronic mail messages; and (ii) all documents evidencing or memorializing communications between the Keleher law firm and R. Murphy, in his capacity as trustee. See Subpoena Exhibit A.

R. Murphy moves the Court for a protective order, which states that the Keleher law firm is not required to produce documents in response to Gorman's subpoena, and that the Keleher law firm is not required to produce a privilege log.  See Motion at 1.  R. Murphy argues that the subpoena, in effect, requests the Keleher law firm to produce its entire file in this litigation, and that the Court should quash the subpoena because it requests attorney-client communications and work product. See Motion at 2.  R. Murphy argues that the Keleher law firm, as legal representatives of a trustee,

does not owe a duty to Gorman, a beneficiary of the trusts. <u>See</u> Motion at 5. R. Murphy also contends that the Keleher law firm should not be required to produce a privilege log because the log would violate attorney-client privilege and the work-product doctrine, and would be unduly burdensome. <u>See</u> Motion at 2.

In response, Gorman argues that, before R. Murphy brought a lawsuit against her, the Keleher law firm represented R. Murphy in his trustee capacity and advised him on the construction of the Trust Agreement and the administration of the trusts. <u>See</u> Defendant's Response to Plaintiff's Motion for Protective Order at 2, filed April 20, 2010 (Doc. 21). Gorman contends that R. Murphy has paid the Keleher law firm with funds from the trusts, both before and after he filed this lawsuit. <u>See</u> Response at 2. Gorman argues that her subpoena of the Keleher law firm requests only documents related to Keleher's representation of R. Murphy in his capacity as trustee and not in his individual capacity. <u>See</u> Response at 2. Gorman contends that, because she is a beneficiary of the trusts, she is entitled to review, among other things, the opinions of lawyers R. Murphy retains to advise him about the Trust Agreement and the administration of the trusts. <u>See</u> Response at 2. Gorman argues that, under the fiduciary exception to the attorney-client privilege and work-product doctrine, the requested documents are not privileged. <u>See</u> Response at 2-3. Gorman argues that the Court should follow the exception set forth in <u>Riggs National Bank v. Zimmer</u>, 355 A.2d 709 (Del. Ch. 1976), which found that a trustee could not withhold production of an opinion letter written by the trustee's counsel, and also found, with respect to the work-product doctrine, that "[t]o permit the work product privilege to shield the memorandum from the beneficiaries would contravene the policy of full disclosure which is essential in the trustee-beneficiary relationship." 355 A.2d at 716. Gorman argues that R. Murphy, as trustee, owes a fiduciary duty to Gorman to act on her behalf and protect her interests as beneficiary. <u>See</u> Response at 5. Gorman argues that

-4-

R. Murphy should not be permitted to use his exclusive access to the funds in the trusts to obtain legal advice and then shield Gorman from that advice.  See Response at 5.  Gorman concedes in her brief that if R. Murphy sought the advice of the Keleher law firm on his own behalf, and not as trustee, then those communications "might be protected from disclosure by the attorney client privilege."  Response at 8.  Gorman argues, however, that such documents are not at issue in the subpoena, as it seeks only documents relating to the Keleher law firm's representation of R. Murphy in his capacity as trustee.  See Response at 8.

In reply, R. Murphy argues that the fiduciary exception to the attorney-client privilege and the work-product doctrine may apply in situations where counsel is retained to advise about the management and administration of a trust, but asserts that the Keleher law firm was retained in anticipation of litigation, and not for administration of the trusts.  See Ralph Murphy's Reply in Support of Motion for Protective Order at 1-2, filed May 3, 2010 (Doc. 22).  R. Murphy argues that he did not retain wills or trusts and estates attorneys; he retained litigators -- Spencer Reid and Gary Van Luchene -- and anticipated litigation with Gorman.  See Reply at 3.  R. Murphy argues that the matter in dispute in the litigation is the construction of the Trust Agreement, in addition to claims such as malfeasance, breach of duty, and punitive damages, and that litigation over the construction of the Trust Agreement should not destroy attorney-client privilege.  See Reply at 3.

In the pre-hearing briefing of the motion, neither party cited Public Service Company of New Mexico v. Lyons, 129 N.M. 487, 10 P.3d 166 (Ct. App. 2000), or any other New Mexico case law on the attorney-client privilege and the exceptions to the privilege.  The Court issued a Minute Order on May 12, 2010, requesting that the parties prepare to discuss at the hearing the applicability of the New Mexico Court of Appeals' decision in Public Service Company of New Mexico v. Lyons to the motion for a protective order.  See Minute Order (Doc. 26).

At the hearing held on May 12, 2010, Mr. Reid argued that Gorman cited no New Mexico case law which supports finding a fiduciary exception to the attorney-client privilege or to the work-product doctrine.  Mr. Reid also argued that the cases which Gorman cited found a fiduciary exception where a fiduciary was dealing with a third party or dealing with administrative matters, and none dealt with a fiduciary exception as applied to a litigation between a fiduciary and a beneficiary.  Mr. Reid explained that Gorman subpoenaed documents from the firm of Laflin, Pick & Heer, P.A., which, before litigation, had supplied R. Murphy with general advice regarding the Trust Agreement, and that the Laflin law firm has produced the requested documents regarding administration advice about the trusts.  Mr. Reid conceded that R. Murphy, in response to Gorman's assertion of the fiduciary exception, also did not cite any New Mexico cases supporting his argument that the fiduciary exception does not apply in a dispute between a fiduciary and a beneficiary.  Mr. Reid stated that, when the Court directed the parties to the case Public Service Company of New Mexico v. Lyons, it became clear why there are no cases discussing the fiduciary exception -- as New Mexico does not recognize ad hoc exceptions to the attorney-client privilege.  Mr. Reid argued that Public Service Company of New Mexico v. Lyons rebuts all of the cases Gorman cited in her response and argues that the holding of the New Mexico Court of Appeals should apply in this case, as this case is based on diversity jurisdiction.  Mr. Reid argued that applying the fiduciary exception in this case, where the trustee and the beneficiary are in a dispute and litigation has ensued, would effectively deprive the trustee of counsel.  He stressed the necessity of candid communication between the trustee and his counsel.  Mr. Reid further argued that R. Murphy has not waived the privilege through offensive use of the attorney-client communications.

Mr. Reid represented to the Court that R. Murphy expressly hired the Keleher law firm in anticipation of litigation and that, from the start of the Keleher law firm's representation, there has

been a contentious relationship between the parties.  He stated that there was early communication between the parties endeavoring to resolve the dispute without litigation, but that it was unsuccessful and Gorman's firm began making litigation threats.  These threats led R. Murphy to seek the Court's assistance in construing the Trust Agreement through a declaratory action.  He also argued that the Keleher law firm communicates daily with R. Murphy and that a privilege log would be too burdensome, as it would create a paper trail of all communications between the Keleher law firm and its client.  Mr. Reid stated that the majority of the file is correspondence between R. Murphy and the Keleher law firm.

In response, Jack Hardwick, Gorman's attorney, argued that the subpoena requests only documents related to R. Murphy in his capacity as trustee and not a request for all of the Keleher's files on R. Murphy.  Mr. Hardwick argued that it is clear that the Keleher law firm is giving R. Murphy advice on the administration of the trusts.  He argued that an example is that the Keleher law firm gave advice regarding the tax documents and how they were filled out, and Mr. Hardwick believes that such documents containing legal advice should be produced to Gorman.  Mr. Hardwick also presented an electronic-mail message from R. Murphy to Gorman which stated that information about the trusts would come from his counsel at the Keleher law firm.  See Defense Exhibit A. Mr. Hardwick argues that, when a trustee retains counsel using assets of the trust, the clients are the beneficiaries -- here, both Gorman and R. Murphy are beneficiaries.  Mr. Hardwick conceded that when a trustee consults with an attorney regarding his personal liability as trustee to beneficiaries, the attorney does not owe a duty to the beneficiary at that point.  Mr. Hardwick argues that he believes R. Murphy has sought advice from the Keleher law firm on both his own personal liability and on matters of administration of the trusts, including the distributions to beneficiaries and how the Trust Agreement is interpreted.

He also argued that a privilege log is essential in this case and that there has been no demonstration that the documents are voluminous so as to create an undue burden.  Mr. Hardwick argued that, once there is a privilege log, there would be a category of documents regarding communications with R. Murphy in his capacity as trustee and matters regarding administration of the trusts.   Mr. Hardwick agreed with the Court that it must first decide whom the client of the Keleher law firm is and whether the Keleher law firm owes a duty to Gorman, and if the Court decides the Keleher law firm owes no duty to Gorman, then the Court must decide whether a fiduciary exception applies under New Mexico privilege law or to the work-product doctrine.  Mr. Hardwick argued that the New Mexico courts have not had the opportunity to consider whether the fiduciary exception could apply and contended that the Court will have to make an Erie[1] guess whether the Supreme Court of New Mexico would permit a fiduciary exception to the attorney-client privilege.  Mr. Hardwick also argued that none of the cases R. Murphy cites deal with a fiduciary who is both a trustee and a beneficiary.  Finally, he argued that Public Service Company of New Mexico v. Lyons does not stand for the proposition that the Court cannot make exceptions to the attorney-client privilege and that Public Service Company of New Mexico v. Lyons did not consider the duties of a trustee to a beneficiary.

Mr. Reid countered that Mr. Hardwick advocates for an ad-hoc exception to the attorney-client privilege.  He argued that it is undisputed that both parties anticipated litigation when R. Murphy hired the Keleher law firm, and argued that the issues in the litigation from the start have been the construction of the Trust Agreement and how the tax code applies to the trusts.  Mr. Reid contended that his client, R. Murphy, knew that, if he contested Gorman's construction of the Trust

---

[1] Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

Agreement and of the tax code as applied to the trusts, she would sue him, and thus he sought legal counsel and filed suit first for declaratory relief.  Mr. Reid also asserted that the Keleher law firm has not been giving general advice to R. Murphy and that the Keleher law firm did not prepare the trusts' tax returns; Deloitte and Touche accounting firm did the tax returns.   Mr. Reid represented that all Deloitte and Touche's documents have been produced to Gorman.

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery." Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J).  Rule 26(c) of the Federal Rules of Civil Procedure provides that, upon a showing of good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery.  Fed. R. Civ. P. 26(c)(1)(A).  See Miller v. Regents of the Univ. of Colo., 188 F.3d 518 (Table), 1999 U.S. App. LEXIS 16712, at **33-34 (10th Cir. July 19, 1999)("The district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties."). "Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought." SEC v. Dowdell, 144 Fed. Appx. 716, 722-23 (10th Cir. 2005)(noting that a third party may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, or has not been served a subpoena seeking discovery).  "It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.).  The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory

-9-

statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotations and citations omitted). Although rule 26(c) is silent as to the time within which the movant must file for a protective order, the Tenth Circuit has held that "a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production." In re Coordinated Pretrial Proceedings in Petro. Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982).

## LAW REGARDING NEW MEXICO ATTORNEY-CLIENT PRIVILEGE

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51 (1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976). Pursuant to rule 501 of the Federal Rules of Evidence, state law supplies the rules concerning attorney-client privilege in diversity cases. See Frontier Ref., Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998)("Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases."); Fed. R. Evid. 501 (stating that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").

1.      **New Mexico Attorney-Client Privilege.**

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 650 (D.N.M. 2007)(Browning, J.)(applying New Mexico state law regarding attorney-client privilege); Bd. of Comm'rs of Doña Ana County v. Las Cruces Sun News, 134 N.M. 283, 291, 76 P.3d 36, 44 (Ct. App. 2003); Rule 11-503(B)

NMRA 2003.  The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived.  See Pina v. Espinoza, 130 N.M. 661, 668, 29 P.3d 1062, 1069 (Ct. App. 2001)(stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability)(citing State v. Gallegos, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App.1978)); United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 217, 629 P.2d 231, 293 (1980)("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough.  The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor.  General objections without specific support may result in waiver of the objections.")(internal quotations omitted).

New Mexico follows a general principle, embodied in Rule 11-501 NMRA 2010, that "a privilege must be required or recognized by a court rule or the New Mexico Constitution." Albuquerque Rape Crisis Ctr. v. Blackmer, 138 N.M. 398, 401, 120 P.3d 820, 823 (2005). See Public Serv. Co. of N.M. v. Lyons, 129 N.M. at 491, 10 P.3d at 170.  New Mexico's approach to privileges is a special product of state-law jurisprudence and departs from rule 501 of the Federal Rules of Evidence, which expressly authorizes lower courts to continue developing and recognizing privileges.  See State ex rel. Attorney General v. First Judicial Dist. Court, 96 N.M. 254, 260, 629 P.2d 330, 336 (1981)("The fact that New Mexico did not follow the approach of Congress but instead limited the privileges available to those recognized by the Constitution, the Rules of Evidence, or other rules of this Court manifests the abrogation and inapplicability of the common law evidentiary privileges.");  Public Serv. Co. of N.M. v. Lyons, 129 N.M. at 491, 10 P.3d at 170. The New Mexico Court of Appeals, in Public Serv. Co. of N.M. v. Lyons, stated: "[W]e are bound by the privileges expressly stated in . . . Rule 11-503 NMRA 2000 (attorney-client privilege) . . . ." 129 N.M. at 491, 10 P.3d at 170.  In Ammerman v. Hubbard Broadcasting, Inc., 89 N.M. 307, 551

P.2d 1354 (1976), the Supreme Court of New Mexico held that rules of privilege, being evidentiary and thus procedural in nature, were constitutionally the domain of the judiciary.   See 89 N.M. at 310, 551 P.2d at 1357.  On that basis, the Supreme Court of New Mexico concluded that statutory privileges created by the legislature were unconstitutional.  See 89 N.M. at 311, 551 P.2d at 1357. New Mexico's approach to privilege, reflected in Rule 11-501, limiting privileges to those required by the state constitution and the rules promulgated by the Supreme Court embodies the principle that the Supreme Court of New Mexico, through its rule-making mechanism -- not the district courts scattered throughout the counties of New Mexico in their individual case-by-case work -- shall develop the privilege doctrine and jurisprudence for the state.

Rule 11-503(D) of the New Mexico Rules of Evidence sets forth the following exceptions to the attorney-client privilege: (i) if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud; (ii) communications relevant to an issue between parties who claim through the same deceased client; (iii) communication relevant to an issue of breach of duty by the lawyer to the lawyer's client or by the client to the client's lawyer; (iv) communications relevant to an issue concerning an attested document to which the lawyer is an attesting witness; and (iv) communications relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients.  See Rule 11-503(D).  Rule 11-511 provides that a person waives privilege if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.  See Rule 11-511.

In Public Service Company of New Mexico v. Lyons, the district court determined that the plaintiffs had implicitly waived their attorney-client privilege and work-product doctrine protection

by affirmatively pleading fraudulent concealment, equitable tolling, and equitable estoppel in their

complaint.  See 129 N.M. at 489, 10 P.3d at 168.  The New Mexico Court of Appeals reversed the

district court, and found that "our courts must adhere closely to waiver as defined in Rule 11-511

and are not free to engage in ad hoc rule-making and waiver analysis as requested by Defendants."

129 N.M. at 492, 10 P.3d at 171.  The New Mexico Court of Appeals rejected the approach of other

courts, which allow the common law to shape privilege, and stated:

> In light of New Mexico's rule-bound law of privilege and the absence of Supreme
> Court case law to the contrary . . . we believe the issue of waiver should be governed
> by, and limited to, Rule 11-511 (waiver of privilege by voluntary disclosure), in the
> absence of any other provision specifically addressing the issue.  Our rules reflect
> a careful, methodical, approach to the development of the rules governing privileges
> -- one that involves public participation and discourages ad hoc judicial intervention.

129 N.M. at 494, 10 P.3d at 173.

In Anaya v. CBS Broadcasting, Inc., No. CIV-06-476, 2007 U.S. Dist. LEXIS 55164

(D.N.M. Apr. 30, 2007)(Browning, J.), this Court found:

> Despite the general tenor of Public Service Company of New Mexico v. Lyons, the
> Court does not believe that the case forecloses subject-matter waiver of the
> attorney-client privilege in the state of New Mexico; rather, based on multiple
> considerations, the Court believes that the New Mexico courts would endorse
> subject-matter waiver with regard to attorney-client privilege if confronted with the
> issue.

2007 U.S. Dist. LEXIS 55164, at **18-19.  The Court considered that: (i) the parties did not cite,

nor did the Court locate, any federal or state appellate court which had refused to adopt

subject-matter waiver in the attorney-client privilege context when confronted with the issue; (ii)

the great weight of authority supported the doctrine of subject-matter waiver; (iii) New Mexico

courts had not barred application of the subject-matter waiver doctrine, and rule 11-511's use of the

term "matter" suggested that it did not foreclose subject-matter waiver; (iv) Public Service Company

of New Mexico v. Lyons dealt with the existence of "voluntary waiver," not the scope of a voluntary

waiver; and (v) rule 11-511's express language did not foreclose a subject-matter scope of the waiver, as long as the waiver of the privilege is voluntary.  See Anaya v. CBS Broad., Inc., 2007 U.S. Dist. LEXIS 55164, at *19.

### 2.    The Fiduciary Exception to the Attorney-Client Privilege.

Some courts have found that a fiduciary exception exists to privilege.  See United States v. Mett, 178 F.3d 1058, 1062 (9th Cir. 1999)("The Ninth Circuit . . . has joined a number of other courts in recognizing a 'fiduciary exception' to the attorney-client privilege."); Washington-Baltimore, etc. v. Wash. Star Co., 543 F. Supp. 906, 909 (D.D.C. 1982)("[W]hen an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries."); Riggs Nat'l Bank v. Zimmer, 355 A.2d 709, 714 (Del. Ch. 1976)("The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.").  The fiduciary exception provides that a fiduciary, such as a trustee of a trust, is disabled from asserting the attorney-client privilege against beneficiaries on matters of trust administration.  See United States v. Mett, 178 F.3d at 1063 (citing Becher v. Long Is. Lighting Co. (In re Long Is. Lighting Co.), 129 F.3d 268, 272 (2d Cir. 1997)).

Courts have based the fiduciary exception on two justifications.  The first justification is that the fiduciary is not the attorney's exclusive client, but acts as a proxy for the beneficiary.  See, e.g., United States v. Mett, 178 F.3d at 1063 ("[A]t least as to advice regarding plan administration, a trustee is not the real client and thus never enjoyed the privilege in the first place.")(internal quotation marks omitted)); Riggs Nat'l Bank v. Zimmer, 355 A.2d at 713 ("As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.").  "Under this justification, the fiduciary exception is but a

logical extension of the client's control of the attorney-client privilege."  In re United States, 590 F.3d 1305, 1312 (Fed. Cir. 2009).    The second justification is that the fiduciary has a duty to disclose all information related to trust management to the beneficiary.  See, e.g., Becher v. Long Island Lighting Co. (In re Long Island Lighting Co.), 129 F.3d at 272 ("[An] ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan."); Riggs Nat'l Bank v. Zimmer, 355 A.2d at 714 ("[T]rustees . . . cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.").  Under this second justification, "the fiduciary exception can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle," the duty to disclose.  United States v. Mett, 178 F.3d at 1063.

        In United States v. Mett, the United States Court of Appeals for the Ninth Circuit explained that the cases invoking the fiduciary exception to the attorney-client privilege demonstrate two ends of a spectrum:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

178 F.3d at 1064.  The courts that recognize a fiduciary privilege, however, have found that it does not extend to counsel retained for defense in a lawsuit.  See Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992)(finding that the fiduciary exception was not applicable to counsel retained for purpose of defending the lawsuit in question).  The Ninth Circuit has explained:

> When an ERISA trustee seeks legal advice for his own protection, the legal fiction of "trustee as representative of the beneficiaries" is dispelled, notwithstanding the

-15-

> fact that the legal advice may relate to the trustee's administration of the trust. Similarly, where a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump the beneficiaries' general right to inspect documents relating to plan administration.

United States v. Mett, 178 F.3d at 1065.

Other courts have rejected the fiduciary exception to the attorney-client privilege. See Wells Fargo Bank v. Superior Court, 22 Cal. 4th 201, 209, 990 P.2d 591, 596 (Cal. 2000) (rejecting the fiduciary exception under California law); Huie v. DeShazo, 922 S.W.2d 920, 924-25 (Tex. 1996)(rejecting the fiduciary exception under Texas law); Paskoski v. Johnson, 626 So. 2d 338, 339 (Fla. Ct. App. 4th 1993)(finding that the "trial court erred in determining that the trustee could not assert an attorney-client privilege or other privileges with respect to communications between the trustee and the trustee's lawyer and accountant in litigation between the trustee and a trust beneficiary."). See also J. Falk, The Fiduciary's Lawyer-Client Privilege: Does It Protect Communications from Discovery by a Beneficiary, 77 Fla. Bar J. 18, 20 (2003)(suggesting that the same arguments advanced in California and Texas -- "that permitting a fiduciary exception to the statutory privilege would improperly expand the role of the judiciary by engrafting a judicial exception onto the statutes . . . could be forcefully advanced under Florida law."). In Huie v. DeShazo, the issue was whether the attorney-client privilege protected communications between a trustee and his attorney relating to trust administration from discovery by a trust beneficiary. The Supreme Court of Texas held that, notwithstanding the trustee's fiduciary duty to the beneficiary, only the trustee, not the trust beneficiary, was the client of the trustee's attorney. The beneficiary therefore could not discover communications between the trustee and attorney otherwise protected under Texas Rule of Civil Evidence 503. See 922 S.W.2d at 921. In that case, the beneficiary argued that the trustee's fiduciary duty of disclosure overrode any attorney-client privilege that

might otherwise apply, and included disclosure of any communications between the trustee and the

trustee's attorney.  See 922 S.W.2d at 923.  The Supreme Court of Texas explained:

> The attorney-client privilege serves the same important purpose in the
> trustee-attorney relationship as it does in other attorney-client relationships.  A
> trustee must be able to consult freely with his or her attorney to obtain the best
> possible legal guidance.  Without the privilege, trustees might be inclined to forsake
> legal advice, thus adversely affecting the trust, as disappointed beneficiaries could
> later pore over the attorney-client communications in second-guessing the trustee's
> actions.  Alternatively, trustees might feel compelled to blindly follow counsel's
> advice, ignoring their own judgment and experience.  See In re Prudence-Bonds
> Corp., 76 F. Supp. 643, 647 (E.D.N.Y. 1948), aff'd, 174 F.2d 288 (2d Cir.
> 1949)(concluding that, without the privilege, "the experience in management and
> best judgment by [the trustee] is put aside . . . which, in the end may result in harm
> to the [beneficiaries]").

Huie v. DeShazo, 922 S.W.2d at 924.  The Supreme Court of Texas rejected the fiduciary exception,

stating: "Rule 503 contains no exception applicable to fiduciaries and their attorneys.  If the special

role of a fiduciary does justify such an exception, it should be instituted as an amendment to Rule

503 through the rulemaking process."  922 S.W.2d at 924-25.  In Wells Fargo Bank v. Superior

Court, the beneficiaries of a private express trust sought to compel the trustee to disclose its

privileged communications with attorneys.  See 22 Cal. 4th at 204-05, 990 P.2d at 593.  The

beneficiaries argued that Wells Fargo had to produce privileged communications to fulfill its

statutory and common-law duties as a trustee to report to the beneficiaries about the trust and its

administration.  See 22 Cal. 4th at 206, 990 P.2d at 594.  The Supreme Court of California rejected

the argument that Wells Fargo's duties as a trustee should take precedence over its privilege as the

client of an attorney, stating: "The privileges set out in the Evidence Code are legislative creations;

the courts of this state have no power to expand them or to recognize implied exceptions.  The

Boltwoods' argument is nothing more than a plea for an implied exception."  22 Cal. 4th at 206, 990

P.2d at 594 (citations omitted).  The Supreme Court of California distinguished its laws from courts

that have permitted a fiduciary exception:

> In most of the other jurisdictions in which this question has arisen, courts have given the trustee's reporting duties precedence over the attorney-client privilege. See, e.g., Hoopes v. Carota, 531 N.Y.S.2d 407, 409 (1988), aff'd. 544 N.Y.S.2d 808 (1989); Riggs Nat. Bank of Washington, D.C. v. Zimmer, 355 A.2d 709, 712-714 (Del. Ch. 1976); United States v. Evans, 796 F.2d 264, 265-266 (9th Cir. 1986); Washington-Baltimore, etc. v. Washington Star Co., 543 F. Supp. 906, 908-909 (D.D.C. 1982). But those courts consider themselves free, in a way we do not, to create exceptions to the privilege. New York's attorney-client privilege, while statutory, is "not absolute." Hoopes v. Carota, 531 N.Y.S.2d at 409. Instead, the courts of that state consider the privilege an "'obstacle' to the truth-finding process that may yield to a strong public policy requiring disclosure . . . ." 531 N.Y.S.2d at 409. The law in Delaware evolved at a time when that state recognized the attorney-client privilege solely as a matter of common law. As such, Delaware courts have considered the privilege to be "an exception to the usual rules requiring full disclosure" and have held that "its scope can be limited where circumstances so justify." Riggs Nat. Bank of Washington, D.C. v. Zimmer, 355 A.2d at 713.

Wells Fargo Bank v. Superior Court, 22 Cal. 4th at 208, 990 P.2d at 595. The Supreme Court of California noted that courts in other jurisdictions that follow a common-law system of privilege are free to craft exceptions, whereas California courts "do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification." 22 Cal. 4th at 209, 990 P.2d at 596. The Supreme Court of California stressed that, under California law, the attorney-client privilege "applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened." 22 Cal. 4th at 209, 990 P.2d at 596. The beneficiaries also argued that they should be considered clients of Wells Fargo's attorneys, and thus entitled to any privileged communications. The Supreme Court of California rejected this argument: "The attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust. The attorney represents only the trustee." 22 Cal. 4th at 212, 990 P.2d at 598. The Supreme Court of California also rejected the beneficiaries' argument that they were entitled to inspect Wells Fargo's privileged communications with attorneys because the trust paid

for the attorneys' advice, stating: "Payment of fees does not determine ownership of the attorney-client privilege. The privilege belongs to the holder, which in this context is the attorney's client." 22 Cal. 4th at 213, 990 P.2d at 598.

New Mexico courts have not addressed whether a fiduciary exception could or should apply under New Mexico's rule-based privilege laws.[2] The Tenth Circuit has not addressed the fiduciary exception; however, district courts within the Tenth Circuit have had occasion to decide whether the exception applies under federal law. In <u>Harrington v. City of Albuquerque</u>, No. CIV 01-0531, 2004 U.S. Dist. LEXIS 10153 (D.N.M. May 11, 2004)(Hansen, J.), the class action litigation dealt with the collection of "fair share" fees from non-members of the defendant union. The plaintiffs took the deposition of the union's general counsel. The general counsel appeared at the deposition, but, upon the advice of his counsel, refused to answer several questions related to the basis for, preparation of, and delay in issuing a revised "fair share" notice to nonmembers of the union as well as possible future notices. The general counsel asserted the attorney-client privilege and work-product doctrine.[3] The plaintiffs filed a motion to compel the deposition testimony, which the magistrate judge granted, and to which the union objected. In ruling on the objections, the Honorable C. LeRoy Hansen, Senior United States District Judge for the District of New Mexico, found that the plaintiffs were seeking information from the union's general counsel that pertained only to the union's fiduciary duty to issue a legally adequate fair share notice, and the general

---

[2] In <u>Muse v. Muse</u>, 145 N.M. 451, 200 P.3d 104 (Ct. App. 2008), the New Mexico Court of Appeals refused to consider the argument whether the attorney-client privilege should "be waived under a fiduciary exception-to-the-privilege theory" because it was raised for the first time on appeal. <u>See</u> 145 N.M. at 464, 200 P.3d at 117.

[3] The court had federal question jurisdiction and thus applied the federal rules regarding privilege and not state rules, as it would in a diversity case.

counsel's knowledge in this regard was derived before and was distinct from any activity designed either to protect the union from litigation or defend the union. Judge Hansen found, therefore, that the union was obligated to issue a legally adequate notice to the non-members, and when it failed to do so, to issue a corrected notice, and the union was at all times required to issue satisfactory notices in the future. These responsibilities existed independent of the litigation, which did not alter the union's fiduciary obligations. See 2004 U.S. Dist. LEXIS 10153, at *5. Judge Hansen also found that the union's general counsel could not refuse to answer questions about the union's failure to meet its constitutionally required fiduciary responsibilities merely because the beneficiaries of that fiduciary relationship were forced to resort to litigation to enforce it. See 2004 U.S. Dist. LEXIS 10153, at *6. Judge Hansen stated: "As Judge Schneider correctly found, the timing of the litigation in no way impacts the existence of the fiduciary relationship or the requirements thereof. The information the Plaintiffs seek is discoverable under the fiduciary exception to the attorney-client privilege." 2004 U.S. Dist. LEXIS 10153, at **6-7.

In Society of Professional Engineering Employees in Aerospace v. Boeing Co., No. 05-1251, 2009 U.S. Dist. LEXIS 102345 (D. Kan. Nov. 3, 2009), the plaintiffs argued that the fiduciary exception applied and that ERISA beneficiaries were entitled to discover the legal advice that guided a plan administrator in interpreting their eligibility for benefits. See 2009 U.S. Dist. LEXIS 102345, at *12. Boeing countered that the fiduciary exception does not apply where the beneficiaries have already commenced litigation and the plan fiduciary retains counsel to defend itself against the beneficiaries. The Honorable Karen M. Humphreys, United States Magistrate Judge for the District of Kansas, held that the fiduciary exception did not negate the attorney-client privilege or work product doctrine, finding that, because the beneficiaries initiated a suit asserting claims directly against the defendant, "the legal fiction of the 'trustee as a representative of the beneficiaries' is

dispelled."   2009 U.S. Dist. LEXIS 102345, at *15 (quoting United States v. Mett, 178 F.3d 1058, 1065 (9th Cir. 1999)).   Judge Humphreys found that the legal advice was sought because of the pending litigation and claims of personal liability; thus, the attorney-client privilege remained intact. Soc'y of Prof'l Eng'g Employees in Aerospace v. Boeing Co., 2009 U.S. Dist. LEXIS 102345, at *15.   In Laasmar v. Phelps Dodge Corp. Life, No. 06-0013, 2006 U.S. Dist. LEXIS 71028 (D. Colo. Sept. 29, 2006), another ERISA benefits case, the Honorable Michael J. Watanabe, United States Magistrate Judge for the District of Colorado, rejected the plaintiffs' argument that, under the fiduciary exception to the attorney-client privilege, the court should have ordered the defendant to produce all documents exchanged between its employees, including counsel, relating to the benefits claim at issue in the case.   Judge Watanabe found "[t]hat the subject documents at issue relate to seeking of legal advice in response to threatened litigation by the Plaintiffs' lawyer and thus fall outside the 'fiduciary exception' to the attorney-client privilege."   2006 U.S. Dist. LEXIS 71028, at *6.   In In re Williams Cos. ERISA Litigation, No. 02-CV-159, 2004 U.S. Dist. LEXIS 30838 (N.D. Okla. Dec. 20, 2004), the Honorable Sven E. Holmes, Chief United States District Judge for the Northern District of Oklahoma, upheld the magistrate judge's decision to grant the defendant's motion for a protective order as to the first two paragraphs of an electronic-mail message and deny the motion as to the third paragraph of the electronic-mail message.   The magistrate judge found that the paragraph in question was a communication from an attorney to a fiduciary concerning the administration of the plan at issue and therefore fell under the fiduciary exception to the attorney-client privilege.   See 2004 U.S. Dist. LEXIS 30838, at *8.

## LAW REGARDING THE WORK-PRODUCT DOCTRINE

The work-product doctrine, which the Supreme Court first recognized in Hickman v. Taylor, 329 U.S. 495 (1947), "shelters the mental processes of the attorney, providing a privileged area

within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238 (1975). "In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. at 510. Unlike the attorney-client privilege, the work-product doctrine is distinguishable from the testimonial privileges. See United States v. Ary, 518 F.3d 775, 783 n.4 (10th Cir. 2008); In re Qwest Commc'n Int'l. Inc, 450 F.3d 1179, 1184 n.3 (10th Cir. 2006). The work-product doctrine is codified in rule 26(b)(3) of the Federal Rules of Civil Procedure and is therefore excepted from rule 501 of the Federal Rules of Evidence. See United States v. Ary, 518 F.3d at 783 n.4.

### 1. **Work-Product Doctrine Generally.**

In diversity cases, rule 26(b)(3) of the Federal Rules of Civil Procedure governs work-product issues. See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc., 136 F.3d at 702 n. 10. Rule 26(b)(3) states:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under . . . this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

"[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1358 (D.N.M. 2002)

(Smith, Magistrate J.)(citing United States v. Nobles, 422 U.S. at 238).  The attorney work-product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions."  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).  Documents or other items that do not reflect the attorney's mental impressions are not protected by the work product doctrine.  See United States v. Nobles, 422 U.S. at 238 ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); In re Grand Jury Proceedings, 658 F.2d 782, 784-85 (10th Cir. 1981)("Such mental impressions are a prerequisite to the invocation of the work product doctrine.").

Analysis whether a communication falls within the attorney-client privilege should precede any inquiry into whether the work-product protection applies.  See Upjohn Co. v. United States, 449 U.S. 383, 397 (1981).  The work-product protection is broader in scope and reach than is the attorney-client privilege because the privilege extends only to client communications, while the work-product protection encompasses much that has its source outside client communications.  See United States v. Nobles, 422 U.S. at 238.  Further, Rule 26(b)(3) permits disclosure of documents and tangible things constituting attorney work product only upon a showing of substantial need and inability to obtain the substantial equivalent without undue hardship.  See Fed. R. Civ. P. 26(b)(3). The focus of the determination whether a document falls within the work-product protection is whether "the motivating purpose" behind its creation was to aid in litigation or possible future litigation.  See In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. 669, 676 (D. Kan. 2005).

"Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation.  This type of work product receives less protection than opinion

work product.  Opinion work product is, basically, the mental impressions of the attorney."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 650 (quoting Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 334 (N.D. Okla. 2002)).  The party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived.  See Anaya v. CBS Broad., Inc., 251 F.R.D. at 650 (citing Kovacs v. Hershey Co., No. 04-cv-01881, 2006 U.S. Dist. LEXIS 69342, 2006 WL 2781591, at *10 (D. Colo. Sept. 26, 2006)).

For the work-product doctrine to apply, the asserting party must show that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative.  See Fed. R. Civ. P. 26(b)(3).  Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.  See Anaya v. CBS Broad., Inc., 251 F.R.D. at 650; Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988)("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").  If the party asserting the work-product protection establishes entitlement to the protection, rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Fed. R. Civ. P. 26(b)(3).  "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."  In re Qwest Commuc'ns. Int'l, 450 F.3d at 1186.

### 2. The Fiduciary Exception and the Work-Product Doctrine.

The work-product doctrine is distinct from the attorney-client privilege and provides, in

some ways, broader protection.  See Foster v. Hill, 188 F.3d 1259, 1272 (10th Cir. 1999)(citing United States v. Nobles, 422 U.S. at 238 n.11)("[The plaintiff] also invoked the work-product doctrine, which is broader than and distinct from the attorney-client privilege."); 6 J. Moore & P. Higginbottom, Moore's Federal Practice § 26.70[1], at 26-435 (3d ed. 2010)("The work product doctrine is not actually a privilege, but rather a qualified immunity from discovery.").   Unlike the attorney-client privilege, both the attorney and the client hold the right to work-product protections, and either may assert it.  See In re Grand Jury Proceedings, 561 F.3d 408, 411 (5th Cir. 2009).  As a result, "a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa."  In re Grand Jury Proceedings, 43 F.3d 966, 972 (5th Cir. 1994).  "Because the attorney work product doctrine fosters interests different from the attorney-client privilege, it may be successfully invoked against a pension plan beneficiary even though the attorney-client privilege is unavailable."  Wildbur v. Arco Chem. Co., 974 F.2d 631, 646 (5th Cir. 1992).  See Helt v. Metro. Dist. Comm'n, 113 F.R.D. 7, 12 (D. Conn.1986)("The plaintiff does not stand in the same position with respect to the attorney, for whom the work-product rule is designed to benefit, as [he does to his] own trustees.")(internal quotations omitted).

Because the work-product doctrine is a qualified immunity set forth in the Federal Rules of Civil Procedure, and not a privilege like the attorney-client privilege, the exceptions to the attorney-client privilege developed in the common law do not necessarily overcome the protections the work-product doctrine provides.  Rule 26(b)(3) provides a necessity exception to the work product privilege, which states that documents "prepared in anticipation of litigation or for trial" may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Fed. R. Civ. P. 26(b)(3)(A)(ii). Even in such a case, the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Courts have also found a crime-fraud exception to the work-product doctrine, which applies upon a showing that a client consulted with an attorney in furtherance of a crime or fraud. See In re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1467 (10th Cir. 1983)(finding that the crime-fraud exception applies to both the attorney-client privilege and the work-product doctrine); Newman v. Gen. Motors Co., 228 Fed. Appx. 245, 246 (3d Cir. 2007)(affirming the district court's finding that the crime-fraud exception "applied to pierce both the attorney-client privilege and the work product doctrine."); In re Grand Jury Subpoena, 419 F.3d 329, 335 (5th Cir. 2005)("The work product privilege is subject to the same crime-fraud exception.").

Whether the fiduciary exception applies to the work-product doctrine is unsettled. A number of courts have found that a fiduciary exception does not apply to the work-product doctrine. See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 385 (3d Cir. 2007); Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1423 (11th Cir. 1994); Sandberg v. Virginia Bankshares, 979 F.2d 332, 355 n.22 (4th Cir. 1992)(the fiduciary exception "does not apply to the work product doctrine"); Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d 1235, 1239 (5th Cir. 1982); Lugosch v. Congel, 219 F.R.D. 220, 243 (N.D.N.Y. 2003); Strougo v. BEA Assocs., 199 F.R.D. 515, 524 (S.D.N.Y. 2001); Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 951 F. Supp. 679, 687 (W.D. Mich. 1996); Helt Metro. Dist. Comm'n, 113 F.R.D. 7, 11-12 (D. Conn. 1986). The United States Courts of Appeals for the Fifth Circuit described the fiduciary privilege as the parties having a "mutuality of interests" between the fiduciary and the beneficiaries, but found that once there is an anticipation of litigation, the "mutuality is destroyed."

Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d at 1239.  See Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. 488, 501 (M.D.N.C. 2008). Recently, in In re United States, 590 F.3d 1305 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit specifically declined to address whether the fiduciary exception applies to the work-product doctrine.  See 590 F.3d at 1313 ("Nor do we address whether the fiduciary exception applies to documents privileged as attorney work product.").  The Federal Circuit upheld the decision of the Court of Federal Claims, which found that "there is no corollary 'fiduciary exception' to the work product doctrine." Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 13 (2009).  The United States Court of Appeals for the Fourth Circuit, in adopting the fiduciary exception to the attorney-client privilege, specifically noted that the fiduciary exception does not apply to the work-product doctrine.  See Sandberg v. Virginia Bankshares, 979 F.2d 332, 355 n.22 (4th Cir. 1992).

In Stoffels v. SBC Communications, 263 F.R.D. 406 (W.D. Tx. 2009), the district court, in reviewing the plaintiffs' motion to compel the defendants to produce records included on its privilege log, first considered whether the defendants established an entitlement to the attorney-client privilege, and if so, whether the fiduciary exception applied, and then, if the district court determined the attorney-client privilege did not apply or that the fiduciary exception precluded assertion of the attorney-client privilege, the district court considered the defendants' entitlement to the attorney work-product protection.  See 263 F.R.D. at 412.  When the district court found the attorney-client privilege did not apply, it questioned whether the documents were prepared in anticipation of litigation, and if so, denied the motion to compel as to those documents.  See 263 F.R.D. at 417-18.  The district court did not treat the fiduciary exception as a way to pierce the work-product doctrine; it used it only as an exception to the attorney-client privilege.  In Parker v.

Stone, 07-cv-00271, 2009 U.S. Dist. LEXIS 33554 (D. Conn. Apr. 21, 2009), the defendant argued

that, if documents fall under the fiduciary exception, they are still not subject to disclosure based

upon the doctrine of work-product immunity.  See 2009 U.S. Dist. LEXIS 33554, at *14.  The

district court did not discuss whether the fiduciary exception applies to the work-product doctrine,

but rather discussed the different burden that must be met when the work-product doctrine is

invoked, explaining:

> There is a three-prong standard for federal work product immunity.  "The material
> must (1) be a document or a tangible thing, (2) that was prepared in anticipation of
> litigation, and (3) was prepared by or for a party, or by or for his representatives."
> [Lagace v. New England Central Railroad, No. 3:06CV1317 (RNC), 2007 U.S. Dist.
> LEXIS 72540, at *4 (D. Conn. Sept. 28, 2007)] quoting Sicurelli v. Jeneric/Pentron
> Inc., No. 03-CV-4934 (SLT)(KAM), 2006 U.S. Dist. LEXIS 29813, *5 (E.D.N.Y.
> May 16, 2006).  Furthermore, the "burden of establishing" the elements of work
> product immunity is on the "party invoking the privilege."  Id. "The party asserting
> the privilege must show 'a real, rather than speculative, concern' that counsel's
> thought processes 'in relation to pending or anticipated litigation' will be exposed
> through disclosure of the compiled documents.  This burden of objective proof
> cannot be met through conclusory ex parte affidavits." In re Grand Jury Subpoenas,
> 318 F.3d 379 (2d Cir. 2003).  There is no evidence on the record from which the
> Court can determine when litigation was anticipated, but it seems that litigation was
> by no means anticipated from the commencement of Bearn's representation of the
> trust in 1999. While it does seem likely that litigation was anticipated at some point
> before the show cause proceeding in probate court in January 2002, that
> determination is necessarily fact-specific and that information is likely contained in
> the very documents withheld.  The burden of proof falls on Stone; and therefore, any
> documents that are not proven subject to work product immunity must be disclosed.

2009 U.S. Dist. LEXIS 33554, at **15-16.

Some cases have applied the fiduciary exception to the work-product doctrine.  In Riggs

Nat'l Bank v. Zimmer, the Delaware Court of Chancery applied the state-law work-product doctrine,

which was patterned after the Federal Rules of Civil Procedure, and found that the doctrine did not

bar disclosure to the beneficiaries.  The Court of Chancery explained that the memorandum which

the beneficiaries sought from the trustees' attorneys "was prepared for the benefit of the

beneficiaries and the attorneys' actions were in the context that the beneficiaries were the ultimate clients to be served." 355 A.2d at 716. "To permit the work product privilege to shield the memorandum from the beneficiaries would contravene the policy of full disclosure which is essential in the trustee-beneficiary relationship." 355 A.2d at 716. The Court of Chancery also found that the requirement of "substantial need" for the documents was fulfilled, explaining:

> There is no "substantial need" in the sense that the beneficiaries need to know the legal views expressed in the memorandum. They do not as they are represented by competent counsel and can get expert advice on the law. But, the beneficiaries are entitled to know what the trustees did, that is, what legal opinion was sought on their behalf and what was done in light of that opinion on their behalf. The production of the opinion would fill a needed factual gap not available, at least not with the same degree of accuracy, from any other source. Thus, even were we to assume, contrary to the judgment expressed above, that the work product privilege is fully operative, the beneficiaries would nevertheless be entitled to inspect the material under the standard set forth in the Rule.

355 A.2d at 716-17. In Lawrence v. Cohn, 90 Civ. 2396, 2002 U.S. Dist. LEXIS 1226 (S.D.N.Y. Jan. 24, 2002), because the district court found that the attorneys representing the executor of an estate in his fiduciary capacity was "serving *de facto* as counsel for the estate, and necessarily, for its beneficiaries," the court also found that the work-product doctrine did not protect the attorneys' files from production to the beneficiaries because "[a]n attorney may not withhold work product from his own client." 2002 U.S. Dist. LEXIS 1226, at **19-20.

## LAW REGARDING DUTIES OF A TRUSTEE'S ATTORNEY TO A BENEFICIARY

"A trustee in the traditional sense has broad discretionary powers over the estate assets and must make difficult investment and distribution decisions. The attorney for the trustee must assist the trustee to make these discretionary decisions." Leyba v. Whitley, 120 N.M. 768, 774, 907 P.2d 172, 178 (1995). In Durham v. Guest, 142 N.M. 817, 171 P.3d 756 (2007), overruled on other grounds by Durham v. Guest, 145 N.M. 694, 204 P.3d 19 (2009), the Supreme Court of New Mexico

stated: "[A]n attorney has no duty to the nonclient beneficiary of a client fiduciary, even when the attorney represents the client in the client's role as a fiduciary, if such a duty would significantly impair the performance of the attorney's obligations to his or her client." 142 N.M. at 823, 171 P.3d at 762.  In Leyba v. Whitley, the Supreme Court of New Mexico recognized that an adversarial relationship can develop between an attorney's client and a third party to whom the attorney's client owes a fiduciary duty.  See 120 N.M. at 771, 907 P.2d at 175.  The Supreme Court of New Mexico stated: "[T]he estate and its beneficiaries are incidental, not intended, beneficiaries of the attorney-personal representative relationship."  120 N.M. at 776, 907 P.2d at 180 (adopting the reasoning of the Supreme Court of Washington in Trask v. Butler, 872 P.2d 1080 (1994)).

In Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. 757, 750 P.2d 118 (1988), the Supreme Court of New Mexico held that the attorneys representing the defendant in a previous lawsuit did not owe a duty to the plaintiff.  The Supreme Court of New Mexico stated:

> An attorney has no duty however to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client. Negligence is not a standard on which to base liability of an attorney to an adverse party. An adverse party cannot justifiably rely on the opposing lawyer to protect him from harm; negligence contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it.  In the present context, this duty is owed by the lawyer to his client and to the legal system.  Negligence does not form a basis for suit by an opposing party.
>
> * * * *
>
> As a matter of public policy in order to maintain and enforce the fidelity and duty of the attorney toward the client, we cannot jeopardize the integrity of the adversarial system by imposing a professional duty on an attorney toward an adverse party.

Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. at 761, 750 P.2d at 122 (citations omitted).

Some courts have held that an attorney advising a fiduciary in connection with his or her

fiduciary duties represents the beneficiaries, and, accordingly, the fiduciary has no privilege to withhold confidential communications from the beneficiaries. See, e.g., Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992)("When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator."); United States v. Evans, 796 F.2d 264, 265-66 (9th Cir. 1986); Riggs Nat'l v. Zimmer, 355 A.2d at 713-14. The Delaware Chancery Court in Riggs Nat'l Bank v. Zimmer reasoned:

> As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served. And, the beneficiaries are not simply incidental beneficiaries who chance to gain from the professional services rendered. The very intention of the communication is to aid the beneficiaries. . . .  In effect, the beneficiaries were the clients of [the trustees' attorney] as much as the trustees were, and perhaps more so.

355 A.2d at 713-14.

Other courts have rejected the argument that the trustee's attorney also owes a duty to the beneficiary of the trust. The Supreme Court of Texas has rejected the finding that a beneficiary is the client of the trustee's attorney, concluding that, under Texas law, the trustee who retains an attorney to advise him or her in administering the trust, not the trust beneficiary, is the client. See Huie v. DeShazo, 922 S.W.2d at 925. The Supreme Court of Texas found that it is the trustee who is empowered to hire and consult with the attorney and to act on the attorney's advice, and while a trustee owes a fiduciary duty to a beneficiary, the trustee's attorney is retained to help the trustee carry out his or her fiduciary duties. "It would strain reality to hold that a trust beneficiary, who has no direct professional relationship with the trustee's attorney, is the real client." Huie v. DeShazo, 922 S.W.2d at 925 (citing Prudence-Bonds Corp. v. Guar. Trust Co., 76 F. Supp. 643 (E.D.N.Y. 1948), aff'd, 174 F.2d 288 (2nd. Cir. 1949)); Shannon v. Superior Court,

217 Cal. App. 3d 986, 992, 266 Cal. Rptr. 242, 246 (Cal. Ct. App. 1990).  The Supreme Court of

Massachusetts in Spinner v. Nutt, 417 Mass. 549, 631 N.E.2d 542 (Mass. 1994), noted that an

attorney must advise a trustee to make difficult decisions with regard to the latter's fiduciary duties,

and declined to impose a duty on the trustee's attorneys running to the trust beneficiaries, reasoning

that imposition of such a duty in light of the often divergent and conflicting interests of a trustee and

trust beneficiaries would create conflicting loyalties that would "impermissibly interfere with the

attorney's task of advising the trustee."  417 Mass. at 553, 631 N.E.2d at 544-45.  The Supreme

Court of California, in Wells Fargo Bank v. Superior Court, rejected the beneficiaries' argument that

they should be considered clients of Wells Fargo's attorneys, and thus entitled to any privileged

communications, stating: "The attorney for the trustee of a trust is not, by virtue of this relationship,

also the attorney for the beneficiaries of the trust.  The attorney represents only the trustee."

22 Cal. 4th at 212, 990 P.2d at 598 (citation omitted).

## ANALYSIS

R. Murphy brings suit in his capacity as trustee of the trusts seeking declaratory relief from

the Court regarding the construction of the Trust Agreement.  Gorman answered and brings

counterclaims against R. Murphy.  Gorman also subpoenaed R. Murphy's counsel, the Keleher law

firm, requesting all documents relating to the Keleher law firm's representation of R. Murphy in his

capacity as trustee.  R. Murphy now moves the Court for a protective order, arguing that the Keleher

law firm is not required to produce the documents Gorman's subpoena requests.

## I.     GORMAN IS NOT A CLIENT OF THE KELEHER LAW FIRM.

The parties concede that the first issue which the Court must address is whether Gorman, as

a beneficiary, is considered, under the applicable law, a client of R. Murphy's attorneys and whether

R. Murphy is therefore required to produce the documents related to the Keleher law firm's

representation of him as trustee.  Gorman argues that an attorney who advises a trustee of a trust owes a duty to the trust beneficiaries.  R. Murphy argues that an attorney for a trustee does not owe a duty to a beneficiary of the trust, and further argues that, in this case, the Keleher law firm owes no duties to Gorman because the Keleher law firm represents R. Murphy in connection with an anticipated and filed litigation.

New Mexico law requires a trustee to keep beneficiaries of the trust "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests."  NMSA 1978, § 46A-8-813A.  New Mexico law, however, has not found that a trustee's lawyer owes a duty to the beneficiaries of the trust.  Gorman argues that the Court should adopt the approach of the Delaware Court of Chancery in Riggs National Bank v. Zimmer, which found: "As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.  And, the beneficiaries are not simply incidental beneficiaries who chance to gain from the professional services rendered." Riggs Nat'l Bank v. Zimmer, 355 A.2d at 713.  The Court has found no New Mexico court which has adopted such a view of the relationship of a beneficiary to a trustee's attorney.[4]  No New Mexico court has addressed whether a beneficiary is considered a client of the trustee's attorney.  Because New Mexico has not directly addressed this issue, this Court must make a determination under Erie Railroad Co. v. Tompkins  how the Supreme Court of New Mexico would rule.  See Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 901 (10th Cir. 2005); UPS v. Weben Indus., 794 F.2d 1005, 1008 (5th Cir. 1986)(stating that, "when making an Erie-guess in the absence of explicit guidance

---

[4] No New Mexico court, state or federal, has cited Riggs Nat'l Bank v. Zimmer, nor has the Tenth Circuit addressed the issue whether a trustee's attorney owes a duty to the trust's beneficiaries.

from the state courts, we must attempt to predict state law, not to create or modify it.").  The Court may consider all resources available,  including decisions of New Mexico courts and the general trend of authority.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001).

"An attorney has no duty . . . to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client."  Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. at 761, 750 P.2d at 122.  In Durham v. Guest, the New Mexico Court of Appeals stated: "[A]n attorney has no duty to the nonclient beneficiary of a client fiduciary, even when the attorney represents the client in the client's role as a fiduciary, if such a duty would significantly impair the performance of the attorney's obligations to his or her client."  142 N.M. at 823, 171 P.3d at 762.  In Richter v. Van Amberg, 97 F. Supp. 2d 1255 (D.N.M. 2000), the Honorable Paul Kelly, United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation in the District Court, found that the attorney-client relationship ran only to the partnership acting through its duly authorized management -- the managing partner -- and did not extend to the representation of the individual partners.  See 97 F. Supp. 2d at 1263 ("Mere representation of a partnership does not, in and of itself, constitute representation of the individual partners.").  Judge Kelly pointed out that, "[i]n analogous circumstances, New Mexico law has supported treating the organizations as a separate entity, distinct from its constituents."  Id. Judge Kelly also identified some factors which might support, or undercut, implication of an attorney-client relationship with an individual partner in any particular case:  "The kind and extent of contacts, if any, between the attorney and the individual partner might be important factors." 97 F. Supp. 2d at 1264 (quoting Responsible Citizens v. Superior Ct., 16 Cal. App. 4th 1717, 1732, 20 Cal. Rptr. 2d 756 (1993)).

In addition to looking at New Mexico law, the Court may look to the trend of authority on whether a beneficiary is considered a client of the trustee's attorney.  Recently, the Delaware Court of Chancery revisited the holding in Riggs National Bank v. Zimmer.  In N.K.S. Distributors, Inc. v. Tigani, No. 4640, 2010 Del. Ch. LEXIS 104 (May 7, 2010), Tigani, the successor beneficiary of a trust, moved to compel document production from the attorneys of the trustee, arguing that, because he was a beneficiary, the disputed documents must be produced because a trustee may not invoke the attorney/client privilege to withhold documents from a trust beneficiary.  See 2010 Del. Ch. LEXIS 104, at *2.  The Delaware Chancery Court explained that Tigani was reading Riggs National Bank v. Zimmer too broadly, asserting that it requires a trustee to produce to a beneficiary all communications containing legal advice pertaining to the trust or the trustee's performance of his duties.  See 2010 Del. Ch. LEXIS 104, at *3.  The Delaware Chancery Court narrowed that interpretation, explaining:

> The holding in Riggs stems from the court's conclusion that the legal services in that case were performed for the benefit of the beneficiaries, who were the lawyer's ultimate clients.  The [attorneys] were not performing legal services for [Tigani's] benefit, however, but instead were advising [the trustee] on how to deal with problems at NKS that [the trustee] believed [Tigani] was causing.  Under these circumstances, [Tigani] cannot be deemed the ultimate client of the [attornies], but, rather, more closely resembled an adverse party. . . .  Moreover, neither the rationale for the decision in Riggs nor the principles of attorney/client privilege and trust law provide any justification for the beneficiary of a trust to receive documents covered by the attorney/client privilege where, as here, those documents were prepared on behalf of a trustee in preparation for litigation between a successor beneficiary and the trustee, who himself was the life beneficiary of the trust.

2010 Del. Ch. LEXIS 104, at **3-4.  The Supreme Court of California in Wells Fargo Bank v. Superior Court rejected the beneficiaries' argument that the trustee's attorney also represented them, stating: "The attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust.  The attorney represents only the trustee."  22 Cal. 4th at 208, 990

-35-

P.2d at 598 (citation omitted).  The Supreme Court of Massachusetts in <u>Spinner v. Nutt</u> noted that an attorney must advise a trustee to make difficult decisions with regard to the latter's fiduciary duties, and declined to impose a duty on the trustee's attorneys running to the trust beneficiaries, reasoning that imposition of such a duty in light of the often divergent and conflicting interests of a trustee and trust beneficiaries would create conflicting loyalties that would "impermissibly interfere with the attorney's task of advising the trustee."  417 Mass. at 552, 631 N.E.2d at 544.  The Supreme Court of Texas in <u>Huie v. DeShazo</u> found that, under Texas law, "the trustee who retains an attorney to advise him or her in administering the trust is the real client, not the trust beneficiaries."  922 S.W.2d at 925.  To come to this conclusion, the Supreme Court of Texas looked to the definition of "client" in its rule on attorney-client privilege, which is defined as "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him."  Tex. R. Civ. Evid. 503(a)(1).  Given this definition, the Supreme Court of Texas found that "[i]t would strain reality to hold that a trust beneficiary, who has no direct professional relationship with the trustee's attorney, is the real client."  922 S.W.2d at 925.

Considering the conclusions of these courts, and in light of the New Mexico Court of Appeals' statement in <u>Durham v. Guest</u> that "an attorney has no duty to the nonclient beneficiary of a client fiduciary, even when the attorney represents the client in the client's role as a fiduciary, if such a duty would significantly impair the performance of the attorney's obligations to his or her client," 142 N.M. at 823, 171 P.3d at 762, the Court believes that, if faced with the circumstances of this case, the Supreme Court of New Mexico would find that the Keleher law firm, as counsel for R. Murphy, does not owe a duty to Gorman, and would hold that Gorman is not a client of the

Keleher law firm.  Like Texas' rule of evidence, rule 11-503 of the New Mexico Rules of Evidence defines "client" as "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer or a representative of a lawyer with a view to obtaining professional legal services."  Rule 11-503(A)(1).  It is the trustee, R. Murphy, who is empowered to hire and consult with the Keleher law firm, and to act on their advice.  While R. Murphy owes fiduciary duties to Gorman, he did not retain the Keleher law firm to represent Gorman and himself, but to represent only himself in litigating with Gorman over the proper construction of the Trust Agreement.  The Court also believes that the Delaware Court of Chancery's recent narrowing of the holding in Riggs National Bank v. Zimmer is applicable to the circumstances of this case.  The Keleher law firm has not been performing legal services for Gorman's benefit.  Rather, it has been advising R. Murphy on how to deal with problems that have arisen between R. Murphy as trustee and Gorman as beneficiary regarding the construction of the Trust Agreement and administration of the trusts.  Under these circumstances, the Court finds that Gorman cannot properly be deemed the Keleher law firm's client, but, rather, more closely resembles an adverse party.  See N.K.S. Distributors, Inc. v. Tigani, 2010 Del. Ch. LEXIS 104, at **3-4.  Because the Court has determined that Gorman is not a client of the Keleher law firm, the Court must analyze whether an exception to the attorney-client privilege applies here that would permit or require the Keleher law firm to turn over its communications with its client, R. Murphy, to Gorman.

II.     **THE ATTORNEY-CLIENT PRIVILEGE PROTECTS R. MURPHY'S COMMUNICATIONS WITH THE KELEHER LAW FIRM, AND NEW MEXICO LAW DOES NOT RECOGNIZE A FIDUCIARY EXCEPTION TO THE PRIVILEGE.**

There is no dispute that New Mexico law applies to determinations regarding attorney-client privilege in this diversity case.  See Wylie v. Marley Co., 891 F.2d 1463, 1472 (10th Cir. 1989)

(applying state attorney-client privilege law); Fed. R. Evid. 501.  Under rule 501 of the Federal Rules of Evidence, privilege is governed by the principles of the common law as they may be interpreted by the courts.  <u>See</u> Fed. R. Evid. 501.  New Mexico has rejected this approach to privilege, and rule 11-501 of the New Mexico Rules of Evidence prohibits New Mexico courts "from engaging in such ad hoc expansion."  <u>Pub. Serv. Co. of N.M. v. Lyons</u>, 129 N.M. at 491, 10 P.3d at 170.

Gorman argues that the Court should apply the fiduciary exception to the attorney-client privilege and find that the Keleher law firm must produce the documents Gorman requested in her subpoena.  <u>See</u> <u>Riggs Nat'l Bank v. Zimmer</u>, 355 A.2d at 712; <u>Remien v. Remien</u>, No. 94 C 2407, 1996 U.S. Dist. LEXIS 11469, at *12 (N.D. Ill. May 22, 1996)("Where fiduciary obligations are owed, these obligations are stronger than the rationales favoring privileged communications. Accordingly, because of the presence of such fiduciary relationships, the attorney-client privilege is not available.").  In <u>Public Service Company of New Mexico v. Lyons</u>, the New Mexico Court of Appeals held that "our courts must adhere closely to waiver as defined in Rule 11-511 and are not free to engage in ad hoc rule-making and waiver analysis as requested by Defendants." 129 N.M. at 491, 10 P.3d at 170.  R. Murphy argues that carving out a fiduciary exception -- which is not one of the five exceptions to the attorney-client privilege expressly stated in rule 11-503(D) -- would constitute ad hoc rule-making on the part of this Court.  Gorman argues that <u>Public Service Company of New Mexico v. Lyons</u> does not stand for the proposition that the Court cannot make exceptions to the attorney-client privilege and that the New Mexico Court of Appeals in <u>Public Service Company of New Mexico v. Lyons</u> did not consider the duties of a trustee to a beneficiary.

After careful consideration of the New Mexico Court of Appeals' decision in <u>Public Service Company of New Mexico v. Lyons</u>, which the Supreme Court of New Mexico has cited favorably,

see Estate of Romero v. City of Santa Fe Police Dep't, 139 N.M. 671, 677, 137 P.3d 611, 616 (2006) (citing Public Service Company of New Mexico v. Lyons for the proposition that a privilege must be recognized by the New Mexico Constitution or the New Mexico Rules of Evidence and holding "Since we do not identify an express or implied law enforcement privilege in the Constitution or our court rules, we are unable to recognize the existence of such a privilege"), the Court believes that the Supreme Court of New Mexico would not permit a judicially-created expansion of the exceptions to the attorney-client privilege to add a fiduciary exception, which has not been recognized in the New Mexico Constitution or in the New Mexico Rules of Evidence.  See Pub. Serv. Co. of N.M. v. Lyons, 129 N.M. at 494, 10 P.3d at 173 ("Our rules reflect a careful, methodical, approach to the development of the rules governing privileges -- one that involves public participation and discourages ad hoc judicial intervention.").  Moreover, the Court has found that Gorman is not a client of the Keleher law firm, and therefore the exception for joint clients provided in rule 11-503(D)(5) is not applicable.

　　　　Mr. Hardwick, at the hearing, argued that this Court went beyond the restrictions on ad hoc rule-making in Public Service Company of New Mexico v. Lyons in its decision in Anaya v. CBS Broadcasting, Inc., where the Court decided that the Supreme Court of New Mexico would likely endorse subject-matter waiver with regard to attorney-client privilege if confronted with the issue. See 2007 U.S. Dist. LEXIS 55164, at *19.  The Court in Anaya v. CBS Broadcasting, Inc., did not create a new rule, as Mr. Hardwick suggested.  Rather, the Court found:

> New Mexico courts have not barred application of the subject-matter waiver doctrine and rule 11-511's use of the term "matter" suggests that it countenances, or, at the very least, does not foreclose, subject-matter waiver. N.M.R.A. 11-511. Moreover, Public Service Company of New Mexico v. Lyons dealt with the existence of "voluntary waiver," not the scope of a voluntary waiver.  Rule 11-511's express language does not foreclose a subject-matter scope of the waiver, as long as the waiver of the privilege is voluntary.  The Court thus believes that the New Mexico

courts would endorse subject-matter waiver of the attorney-client privilege if confronted with the issue.

2007 U.S. Dist. LEXIS 55164, at *19.  The Court also found that "[t]he great weight of authority support[ed] the doctrine of subject-matter waiver."  2007 U.S. Dist. LEXIS 55164, at *19 (citing Murray v. Gemplus Int'l, S.A., 217 F.R.D. 362, 366 (E.D. Penn. 2003); Edwards v. Whitaker, 868 F. Supp. 226, 229 (M.D. Tenn. 1994)).  Here, unlike in Anaya v. CBS Broadcasting, Inc., the Court does not believe that the fiduciary exception that Gorman wants the Court to adopt falls within the scope of any of the exceptions rule 11-503(D) provides.  New Mexico law is that the Court is "not free to engage in ad hoc rule-making," and in light of New Mexico's rule-bound law of privilege, the Court cannot properly go beyond rule 11-503.  Pub. Serv. Co. of N.M. v. Lyons, 129 N.M. at 494, 10 P.3d at 173.  The Court's decision also finds support in the Supreme Court of Texas and the Supreme Court of California's decisions rejecting adoption of a fiduciary exception, as both states, like New Mexico, have restricted privilege to the rules.  See Wells Fargo Bank v. Superior Court, 22 Cal. 4th at 209, 990 P.2d at 596 ("What courts in other jurisdictions give as common law privileges they may take away as exceptions.  We, in contrast, do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification."); Huie v. DeShazo, 922 S.W.2d at 924-25 ("Rule 503 contains no exception applicable to fiduciaries and their attorneys.  If the special role of a fiduciary does justify such an exception, it should be instituted as an amendment to Rule 503 through the rulemaking process.").  In contrast to the Court's decision in Anaya v. CBS Broadcasting, Inc., the weight of authority here does not favor finding a fiduciary exception to privilege in a rule-based privilege regime.

The Court believes that, if the Supreme Court of New Mexico were confronted with this issue, it would not find a fiduciary exception.  Moreover, even if New Mexico law permitted a

fiduciary exception, the Court does not believe that the exception would apply to the documents subpoenaed in this case. R. Murphy retained the Keleher law firm in anticipation of litigation with Gorman over the construction of the Trust Agreement and the administration of the trusts. Thus, any communications between R. Murphy and his attorneys have been in the shadow of the specter of litigation. Courts that have found a fiduciary exception have also found that the exception does not apply to legal advice and communications obtained by a trustee when his interests are adverse to the beneficiary. See Wildbur v. ARCO Chemical Co., 974 F.2d 631, 645 (5th Cir. 1992)(finding that the fiduciary exception was not applicable to counsel retained for purpose of defending the lawsuit in question); United States v. Mett, 178 F.3d at 1065 ("When an ERISA trustee seeks legal advice for his own protection, the legal fiction of 'trustee as representative of the beneficiaries' is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust."). R. Murphy sought the legal advice of the Keleher law firm -- specifically litigators at the Keleher law firm, and not transactional trusts and estates lawyers -- for his personal protection, and thus the attorney-client privilege attaches to his communications with the Keleher law firm. See United States v. Mett, 178 F.3d at 1065 ("[W]here a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump the beneficiaries' general right to inspect documents relating to plan administration."). The attorney-client privilege serves the same important purpose in the trustee-attorney relationship as it does in other attorney-client relationships. R. Murphy, as trustee, must be able to consult freely with his attorneys to obtain the best possible legal guidance. See Huie v. DeShazo, 922 S.W.2d at 924 ("Without the privilege, trustees might be inclined to forsake legal advice, thus adversely affecting the trust, as disappointed beneficiaries could later pore over the attorney-client communications in second-guessing the trustee's actions."). Regardless what hat he is wearing

-41-

-- trustee or beneficiary -- R. Murphy is entitled to a lawyer.  Gorman contends that, because, as beneficiary, she is entitled to advice given to the trustee on the construction of the Trust Agreement, and because the dispute between R. Murphy and Gorman concerns the construction of the Trust Agreement, privilege should not protect from disclosure to Gorman any documents regarding the Keleher law firm's advice on the construction of the Trust Agreement.  This result should not be the case -- as it leads to the unreasonable result that R. Murphy cannot seek counsel to protect himself from litigation arising from his interpretation of the Trust Agreement.  Gorman has cited no cases which assert that, when a dispute between a trustee and a beneficiary arises regarding the construction of a trust agreement, there is no privilege between the trustee and his attorney.  The Court finds that, even if New Mexico recognized a fiduciary exception, which the Court believes it would not, R. Murphy's communications with the Keleher law firm in this case are protected.

## III.    THE FIDUCIARY EXCEPTION DOES NOT PIERCE THE PROTECTIONS OF THE WORK-PRODUCT DOCTRINE.

Whereas New Mexico's law applies when considering whether the attorney-client privilege protects the Keleher law firm's communications with R. Murphy, federal law, specifically rule 26(b)(3) of the Federal Rules of Civil Procedure, governs the work-product doctrine in this diversity case.  The purpose of the work-product doctrine differs from that of the attorney-client privilege.  The attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of the legal system, by protecting the confidentiality of communications between clients and their attorneys.  In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation.  Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.  The

work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  United States v. Nobles, 422 U.S. at 238.  "In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510 (1947).  Work-product protection "extends to the production of material assembled by an attorney in preparation for impending litigation."  Thompson v. United States, 532 F.2d 734, 738 (10th Cir. 1976)(quotation omitted).

Even in the absence of a valid privilege, the work-product doctrine may nonetheless protect from disclosure communications between an attorney and his client prepared in anticipation of litigation.  The work-product doctrine comports with the notion of fair play within an adversarial system of justice, i.e., "the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side."  Fed. R. Civ. P. 26(b)(3) advisory committee note.  The work-product doctrine is designed to benefit not only the client, but also the attorney.  See In Re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014 (1st Cir. 1988)("Our adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference."); In re Special September 1978 Grand Jury (II), 640 F.2d 49, 63 (7th Cir. 1980)("As we have noted one of the purposes of the work product doctrine is to protect the work of the attorney from disclosure for the benefit of the attorney.").  Unlike the attorney-client privilege, the attorney as well as the client hold work-product protection, and either may assert it.  See In re Grand Jury Proceedings, 561 F.3d at 411.  Thus, regardless of the relationship between the trustee and the beneficiary, upon which the fiduciary exception is built, the attorney's right to his mental

-43-

impressions, conclusions, opinions, or legal theories is not implicated in the justification that courts have found for a fiduciary exception to attorney-client privilege.

Gorman argues that the fiduciary exception applies to both the attorney-client privilege and the work-product doctrine. See Response at 2 ("Murphy's motion ignores well established case law regarding the fiduciary exception to the attorney client privilege and work product rule."). The Court agrees with the weight of authority that has found that the fiduciary exception does not apply to the work-product doctrine. See Sandberg v. Virginia Bankshares, 979 F.2d at 355 n.22 (the fiduciary exception "does not apply to the work product doctrine"); Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d at 1239; Jicarilla Apache Nation v. United States, 88 Fed. Cl. at 13 (finding that "there is no corollary 'fiduciary exception' to the work product doctrine"); Lugosch v. Congel, 219 F.R.D. at 243 (finding that the "fiduciary exception is limited to invasion of the attorney-client privilege and is not extended to the work product doctrine" because "the work product doctrine belongs to the litigator not the litigant fiduciary and it is the lawyers' impressions, strategies, and theories, the law is attempting to guard"); Strougo v. BEA Assocs., 199 F.R.D. at 524; Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 951 F. Supp. at 687; Helt Metro. Dist. Comm'n, 113 F.R.D. at 11-12. In refusing to apply the fiduciary exception to the work-product doctrine, these cases have observed that the exception, as applied to the attorney-client privilege, is based upon a mutuality of interest between the fiduciary and the beneficiaries, and that once there is sufficient anticipation of litigation to trigger the work product immunity, the mutuality between a trustee and a beneficiary is destroyed. See Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d at 1239; Jicarilla Apache Nation v. United States, 88 Fed. Cl. at 13.

Gorman relies on Riggs National Bank v. Zimmer and Lawrence v. Cohn as her well-

established case law.  Both of those cases found that the work-product doctrine could not shield documents from beneficiaries under the fiduciary exception.  Both cases, however, justify the inapplicability of the work-product doctrine through the conclusion that the beneficiary is the true client of a trustee's attorney.  See Lawrence v. Cohn, 2002 U.S. Dist. LEXIS 1226, at *20 ("An attorney may not withhold work product from his own client.").  Because the Court finds, under federal work-product law, that Gorman is not a client of the Keleher law firm, these courts' conclusions are inapplicable.  The Court has found no cases where a court has found that the fiduciary exception overcomes the qualified immunity that the work-product doctrine provides where the court did not first determine that the beneficiaries should be considered clients of the trustee's attorneys.  The Court does not believe that there is a sound basis in federal work-product law to find that the attorney for the trustee is also the attorney for the beneficiary when the trustee and the beneficiary are engaged in litigation against each another.  See Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d at 1239 (finding that "once there is sufficient anticipation of litigation to trigger the work product immunity, . . . this mutuality [of interest between the fiduciary and the beneficiaries] is destroyed," making it unreasonable "to indulge in the fiction that counsel, hired by [the fiduciary], is also constructively hired by the same party counsel is expected to defendant against."); Jicarilla Apache Nation v. United States, 88 Fed. Cl. at 13 ("[W]hen a fiduciary retains counsel and seeks legal advice for its own protection against the beneficiaries, any notion that it is seeking advice on behalf of the beneficiaries evaporates, leaving the beneficiaries with no reasonable expectation that they will be kept informed of such matters."); Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. at 501 (finding that once there is "a real anticipation of litigation," the mutuality of interests between the fiduciary and the beneficiary is destroyed); Donovan v. Fitzsimmons, 90 F.R.D. 583, 588 (N.D. Ill. 1981)

("[B]eneficiaries . . . do not stand in the same position with respect to the attorney, for whom the work-product rule is designed to benefit, as they do to their own trustees.").  Accordingly, the Court does not believe, under federal work-product law, that a trustee's attorney also represents the beneficiary.  The Court also does not believe that a trustee's attorney is foreclosed from asserting the protection of the work-product doctrine against the beneficiary.

In this case, where R. Murphy, even in his trustee hat, hired the Keleher law firm in anticipation of litigation with Gorman, the beneficiary, it makes no sense to require the Keleher law firm to disclose its work product concerning the central issue in the litigation -- the construction of the Trust Agreement and the conclusions, opinions, or legal theories that the Keleher law firm has developed about the Trust Agreement.  See Koenig v. Int'l Sys. & Controls Corp. Sec. Litig. (In re Int'l Sys. & Controls Corp. Sec. Litig.), 693 F.2d at 1239 ("It is not reasonable to indulge in the fiction that counsel, hired by management, is also constructively hired by the same party counsel is expected to defend against.").  The Court, therefore, will not hold that the fiduciary exception applies, under the circumstances of this case and under federal work-product law, to the work-product doctrine, and the Keleher law firm may invoke the work-product doctrine to protect its work product from disclosure to Gorman.  In sum, R. Murphy and the Keleher law firm have work-product protection for some of their materials under federal work-product law. Gorman is not a client of the Keleher law firm under federal work-product law and the fiduciary exception is not applicable to the work-product doctrine.  Even if federal law recognized Gorman as the Keleher law firm's client and/or the fiduciary exception to the work-product doctrine, it would not recognize this relationship and/or the exception under the circumstances of this case.  Accordingly, R. Murphy and the Keleher law firm work-product protection remains intact.  Gorman has not made the requisite showing that she "has substantial need of the materials in the preparation of [her] case and that [she]

is unable without undue hardship to obtain the substantial equivalent of the materials by other means," Fed. R. Civ. P. 26(b)(3)(A)(ii), and thus has not made the necessary showing to overcome R. Murphy's and the Keleher law firm's right to work-product protection.

## IV.   THE COURT WILL QUASH THE SUBPOENA AND NOT REQUIRE A PRIVILEGE LOG AT THIS TIME.

The subpoena issued to the Keleher law firm requests:

1.     All documents relating to your representation of Ralph Murphy, in his capacity as Trustee of the Anthony E. and Agnes P. Murphy Revocable Trust UTA dated November 25, 1985, including, but not limited to:

    a.     Correspondence

    b.     Notes and memorandum

    c.     Email

2.     All documents evidencing or memorializing communications between you and Ralph Murphy, in his capacity as Trustee of the Anthony E. and Agnes P. Murphy Revocable Trust UTA dated November 25, 1985.

Subpoena to Produce Documents, Information or Objects in a Civil Action Exhibit A, filed April 13, 2010 (Doc. 20-1).  Gorman argues that R. Murphy cannot withhold the documents requested on the basis of the attorney-client privilege or the work-product doctrine because the fiduciary exception applies.  The Court rejects the argument that the Supreme Court of New Mexico would recognize a fiduciary exception to New Mexico's attorney-client privilege rules.  The Court also finds that a fiduciary exception does not apply to the work-product doctrine.  R. Murphy argues that the scope of the subpoena "in effect, request Keleher to produce its entire file in this litigation." Motion at 2.  At the hearing, Mr. Reid represented that the majority of the Keleher law firm's file related to this matter contains communications between the firm and its client.  Because the Court finds that the attorney-client privilege and the work-product doctrine protect R. Murphy's

communications with his attorneys at the Keleher law firm and protect the Keleher law firm's memoranda, notes, correspondence, and electronic-mail relating to its representation of R. Murphy, the Court will issue a protective order quashing the subpoena.

The Court also does not see much benefit or necessity in requiring the Keleher law firm to create a privilege log of its working file in this litigation.  Gorman is, however, entitled to a privilege log if R. Murphy is asserting attorney-client privilege and work-product protection to withhold documents otherwise discoverable.  See Fed. R. Civ. Pro. 26(b)(5).  All Gorman must do is ask the Keleher law firm for a privilege log, and R. Murphy and the Keleher law firm will be required to produce one.  The Court cautions Gorman, however, that if she requests a privilege log of all of the Keleher law firm's correspondence, memoranda, notes, and electronic-mail, R. Murphy will also be entitled to a similar privilege log of all of Gorman's counsel's files.  The Court will therefore grant the motion for a protective order without prejudice to either party requesting a privilege log from the other party if the party deem such log necessary or desirable.

**IT IS ORDERED** that the Plaintiff's Motion for Protective Order is granted.  The Court will quash Defendant Dena C. Keeling Gorman's subpoena of documents from Plaintiff Ralph Murphy's legal representative, Keleher & McLeod, P.A.  The Court grants the request to not require the Keleher law firm to produce a privilege log of its working files at this time without prejudice to either party later requesting a privilege log.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

William Spencer Reid
Deron B. Knoner
Keleher & McLeod, P.A.
Albuquerque, New Mexico

　　　　*Attorneys for the Plaintiff*

Jack N. Hardwick
Kurt Antony Sommer
Sommer, Udall, Sutin, Hardwick & Hyatt, P.A.
Santa Fe, New Mexico

　　　　*Attorneys for the Defendant*